**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02013-CMA

FRANK J. PERALTA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Social Security Commissioner,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Frank J. Peralta's ("Plaintiff") application for social security disability benefits prior to January 1, 2012,[1] under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33.  Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff filed an application for disability benefits, alleging a disability onset date of January 8, 2010.  Plaintiff was born on April 1, 1948, and was 61 years old on the date of his alleged disability onset.  (AR at 11, 39.)[2]  After his initial application was denied, Plaintiff requested a hearing, which was held on August 4, 2010, before an Administrative Law Judge ("ALJ").  (AR at 21.)

---

[1] The ALJ awarded Plaintiff benefits beginning on January 1, 2012.  (AR at 11).

[2] Citations to the Social Security Administrative Record, which is found at Doc. # 10, will be to "AR" followed by the relevant page number.

Plaintiff testified that he worked as an electrician for 40 years. The last date he worked was on January 7th or 8th of 2010, at which time he was laid off because he "couldn't adequately do the work." (AR at 27, 32.) He received unemployment following his termination from employment for 99 weeks, until December 2011. As a requirement for receiving unemployment, Plaintiff certified to the State of Colorado that he was ready and able to work and, in fact, looked for work with electrical employers, suppliers, and sign companies. (AR at 27-29.)

Plaintiff testified that he could no longer kneel because his knee is damaged and he could not lift because he has arthritis in his shoulders. (AR at 33.) He also testified that he previously typed 35 words per minute, but he can no longer type the way he used to due to arthritis in his hands. (AR at 34.) He believes that if he were to attempt to work as an electrician, he would endanger himself and others to potential electrocution. (AR at 34-35.) His last position was as a service manager, which entailed taking service calls and dispatching journeymen electricians. However, that position required him to type or write, which he could no longer do. (AR at 35.)

On March 1, 2012, the ALJ issued a partially favorable decision, awarding Plaintiff benefits from January 1, 2012 onward, but denying benefits from January 8, 2010 until January 1, 2012. (AR at 10-21.) Because Plaintiff challenges only the denial of benefits between his alleged disability onset date of January 8, 2010 until January 1, 2012, the Court will focus on that portion of the ALJ's decision. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through February 28, 2014. In applying the five-step sequential evaluation process outlined

in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 8, 2010 [Step 1];

2. Plaintiff had the following severe impairments: osteoarthritis of the bilateral hands, left shoulder, left knee, and lumbar spine [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Prior to January 1, 2012, Plaintiff had the residual functional capacity ("RFC") "to perform medium work, as defined in 20 CFR 404.1567(c), except the claimant could perform no more than occasional kneeling or overhead lifting with the left upper extremity." [Step 4]; and

5. Prior to January 1, 2012, Plaintiff was able to perform his past relevant work as a service manager [Step 5].

Plaintiff requested that the Appeals Council review this portion of the ALJ's decision, which it declined to do. (AR at 1-3.) On July 30, 2013, Plaintiff filed his appeal to this Court of the Commissioner's final decision. (Doc. # 1.) Plaintiff filed his opening brief on December 16, 2013, the Commissioner responded on January 15, 2013, and Plaintiff replied, though not substantively, on January 23, 2014. (Doc. ## 13, 14, 15.)

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

### III.  ANALYSIS

Plaintiff raises four arguments in support of his contention that the ALJ committed errors in rendering her decision. However, because the last two arguments are interrelated, the Court will address those arguments together. Thus, the Court will address, in turn, the following contentions: (1) the ALJ erred in assessing Plaintiff's credibility; (2) Plaintiff's RFC prior to January 1, 2012 is not supported by substantial evidence; and (3) the ALJ's determination that Plaintiff can perform his past relevant work is not supported by substantial evidence.

**A.     WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ erred when she determined that Plaintiff's complaints of disabling claim were not credible. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). Provided the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference. *Id.* at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record"). Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

SSR 96-7p provides a non-exhaustive list of factors that an ALJ's must consider in addition to the objective medical evidence when determining whether she finds Plaintiff's complaints of disabling pain credible. Those factors include: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications and any side effects; (5) treatment, other than medication, that the individual has received; (6) measures other than treatment that Plaintiff uses to relive pain; and (7) any other relevant factors. SSR 96-7P, 1996 WL 374186, *3.

Plaintiff contends that the ALJ erred because her credibility assessment merely recited the legal standard and did not link that standard to specific evidence. The Court disagrees with this characterization of the ALJ's credibility determination. Though the ALJ did not recite the list of factors, her analysis addressed several of these considerations as well as other relevant factors. *See* (AR at 16-17) (objective medical evidence); (AR at 15, 17-18) (daily activities); (AR at 16) (location of pain); (AR at 16) (treatment history); (AR at 17) (other factors). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence she relied upon in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The Court finds that the ALJ did address specific evidence she believed undermined Plaintiff's credibility and, therefore, her analysis was sufficient. *See Lately v. Colvin*, No. 13-1131, 2014 WL 1227632, *3 (10th Cir. 2014) (order and judgment) (ALJ's discussion of evidence demonstrates record was adequately developed and precedent requires nothing more).

Plaintiff contends that the ALJ improperly relied on Plaintiff's affirmation that he was ready, able, and willing to work during the time he received unemployment benefits because the ALJ does not establish that this is inconsistent with the social security standards.  However, as the ALJ asserts in her decision, she may properly consider Plaintiff's collection of unemployment benefits in assessing his credibility.  *Id.; Vanetta v. Barnhart,* 327 F. Supp. 2d 1317, 1321 (D. Kan. 2004).  Similarly, the ALJ properly relied on her assessment, based on evidence in the record, that Plaintiff was laid off for reasons other than a health-related impairment.  *See Potter v. Secretary of Health and Human Svcs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (per curiam).  The ALJ "clearly and affirmatively linked [her] adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [this Court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the agency."  *Wall*, 561 F.3d at 1070.

**B.   WHETHER PLAINTIFF'S PRE-JANUARY 1, 2012 RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff contends that his pre-January 1, 2012 RFC is not supported by substantial evidence.  Specifically, he contends that because Plaintiff's RFC does not include limitations related to osteoarthritis of the bilateral hands and the injury to his left knee, the RFC "is not supported by substantial evidence."  (Doc. # 13 at 15-16.)  Typically, an argument that the RFC does not include certain limitations relates to an allegation that the ALJ failed to properly assess and give weight to particular medical opinion, or that the ALJ failed to include a particular limitation in the RFC.  However, Plaintiff does not make either argument here.  What's worse, Plaintiff does little to legally substantiate his argument beyond reciting the legal standard for fashioning

6

an RFC and determining whether that RFC is supported by substantial evidence. However, because "[e]vidence is not substantial if it is overwhelmed by other evidence in the record," *Grogan*, 399 F.3d at 1261-62, the Court construes this argument as a contention that overwhelming evidence demonstrates that the ALJ should have included limitations relating to his arthritic condition and knee injury.

The ALJ determined that prior to January 1, 2012, Plaintiff could "perform medium work, as defined in 20 CFR 404.1567(c), except the claimant could perform no more than occasional kneeling or overhead lifting with the left upper extremity."

Plaintiff argues that limitations related to osteoarthritis in his hands and the injury to his knee "are supported by the evidence and . . . are not contradicted." Specifically, Plaintiff points to, "the medical source opinion of Dr. Barrack regarding [Plaintiff's] hands, [(AR at 253-55, 302-06),] as well as the medical source opinions regarding his knee, . . . [(AR at 200-01)]." (Doc. # 13 at 15.) The Court will address each of these pieces of evidence in turn.

The "opinion[] regarding [Plaintiff's] knee" is, in fact, an MRI dated August 28, 2006, in which Dr. Sherman opined that Plaintiff suffered from

> [s]evere degenerative disease involving the medial meniscus with intrasubstance degenerative tearing, deformity, and partial extrusion of the meniscus out of the joint. There is marginal enthesophyte formation and joint space narrowing with probable chondromalacia. . . . A small to moderate sized joint effusion is present. The cruciate ligaments are intact.

(AR at 200.) The following page is a Physician Activity Status Report dated April 2, 2007, by Dr. Dickson, which restricts Plaintiff from squatting and/or kneeling "until [the] next physician visit." (AR at 201.) In her decision, the ALJ considered these pieces of evidence, but determined that despite the 2006 MRI, Plaintiff "continued to work with

this impairment with some temporary limitations." (AR at 16.) Plaintiff points to no record evidence that demonstrates the squatting and kneeling limitations were more than temporary and he bears the burden of proving that he has a disability. *See Castine v. Astrue*, 334 Fed. App'x 175, 179 (10th Cir. 2009) (order and judgment). The ALJ did, however, account for Plaintiff's knee injury by limiting him to occasional kneeling.

Regarding Plaintiff's hands, the ALJ explained that Plaintiff's treatment records reflect that he "did not report any ongoing symptoms until he underwent a physical exam, completed on January 25, 2010." (AR at 16) (discussing treatment notes appearing in AR at 252-56). Following that exam,

> [x]-ray imaging of his left hand, completed on January 29, 2010, showed no joint space narrowing or definite periarticular erosions, with no signs of inflammatory arthritis seen. Some tiny metallic foreign bodies were seen over the tip of the left third finger, and it was not if they were on or in the skin. There was some deformity of the distal ulna, which was likely port-traumatic, with a small calcification seen off the ulnar styloid. . . . X-ray imaging of the . . . right hand showed some mild joint space narrowing at the third metacarpophalangeal joint, which could represent a degenerative or post-traumatic chance or be secondary to an inflammatory arthritis, however, no periarticular erosions were see. Mild degenerative changes at the right second, distal interphalangeal joint were also seen.

(AR at 16.) After reviewing this evidence, the ALJ noted, "the claimant has not reported any ongoing arthritic symptoms on a consistent basis since the alleged disability onset date." (AR at 17.) In considering this evidence, she stated that the "objective evidence fails to provide a compelling basis for the claimant's statements regarding his exertional, postural, and manipulative limitations. Of note, the x-ray imaging shows only some mild degenerative changes in his bilateral hands." (AR at 17).

Last, Plaintiff points to a medical source statement authored by Dr. Barrack. (AR at 302-06). Again, the ALJ discussed this statement, but determined that it was

8

entitled to no weight to the extent Dr. Barrack opined on limitations for the period prior to January 1, 2012.  Plaintiff has not challenged the weight assigned to this opinion.

Each piece of evidence cited by Plaintiff as substantial evidence of limitations related to his hand and knees was considered by the ALJ and explicitly discussed in conjunction with her review of the evidence.  In essence, Plaintiff asks this Court to reweigh the evidence, which it cannot do. *See Salazar,* 468 F.3d at 621.  The ALJ's decision is supported by substantial evidence.

**C.   WHETHER THE ALJ'S DETERMINATION THAT PLAINTIFF COULD PERFORM HIS PAST RELEVANT WORK PRIOR TO JANUARY 1, 2012 IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Finally, Plaintiff contends that the ALJ's determination that Plaintiff could perform his past relevant work as a service manager is not supported by substantial evidence.  At the outset, the Court notes that this argument is poorly developed, with no citations to case law and only one citation to 20 C.F.R. § 404.1565.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Miller v. Astrue*, 496 F.App'x 853, 855 (10th Cir. 2012); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.")  Nonetheless, the Court will do its best to address Plaintiff's contentions.

At the step four, the ALJ considers her assessment of Plaintiff's RFC and past relevant work.  If Plaintiff can still do his past relevant work, the ALJ will find that he is not disabled.  20 C.F.R. § 404.1520 (a)(4)(iv).

First, because a vocational expert did not testify at the hearing, Plaintiff alleges that Plaintiff impermissibly relied solely on the statement of a Single Decision Maker ("SDM") in her determination that Plaintiff could perform his past relevant work. While an ALJ may not assign weight to an SDM in fashioning an RFC, *Kempel v. Astrue,* No. 08–4130–JAR, 2010 WL 58910, *7 (D. Kan. Jan. 4, 2010), Plaintiff points to no authority showing that the ALJ's reliance in this context was impermissible. Many ALJs call upon vocational experts to testify to matters at steps four and five. However, the regulations do not appear to require the testimony of a vocational expert at step four. *See* 20 C.F.R. § 404.1560 ("Determining whether you can do your past relevant work. We **will** ask you for information about work you have done in the past. We **may** also ask other people who know about your work. . . . We **may** use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . .") (emphasis added). Moreover, although the ALJ's decision shows that she considered the SDM's opinion on the matter, the ALJ ultimately determined that Plaintiff could perform only his past relevant work as a service manager. Conversely, the SDM concluded that he could perform his past work as a service manager, service tech, service tech foreman, and electrical foreman. Therefore, the ALJ did not rely upon the SDM's opinion, but rather came to her own independent determination.

Second, Plaintiff alleges that the ALJ erred because there was "no mention of 'vocation factors' as defined in 20 C.F.R. § 404.1565." Plaintiff goes on to state, "[W]e do not actually know what the SDM is considering these 'vocational factors' for a service manager to be." (Doc. # 16-17.) Curiously, 20 C.F.R. § 404.1565, the regulation to

which Plaintiff cites, does not contain a list of "factors," but instead is titled "Your work experience as a vocational factor." That section appears under the subheading for "Vocational Considerations" and is accompanied by other subsections, including, "Your age as a vocational factor", 20 C.F.R. § 404.1563, and "Your education as a vocational factor", 20 C.F.R. § 404.1564. Because Plaintiff has not established that the ALJ failed to consider factors that she was required to discuss on record, this argument fails.

Last, Plaintiff alleges that if the ALJ "used the work history completed by [Plaintiff to determine the demands of his past work as a service manager] . . . she would have had to consider the need for [Plaintiff] to write, type, or handle small objects two hours per day." However, as addressed *supra*, the ALJ did not include limitations related to Plaintiff's hands and his ability to type, manipulate, or grasp. Therefore, she was not required to address whether he was precluded from his past work on that basis.

## IV.  **CONCLUSION**

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is AFFIRMED.   Each party shall bear its own costs and attorney fees.

DATED:  May   16  , 2014

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge